UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Gregory Charles Cole, | ) | Civil Action No. 5:20-2116-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Kilolo Kijakazi,[1] Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil

Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition

for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial

review of a final decision the Commissioner of Social Security ("Commissioner"), denying his claim

for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). Having

carefully considered the parties' submissions and the applicable law, the court reverses and remands

the Commissioner's decision for further administrative action for the reasons discussed herein.

I.      Relevant Background

        A.      Procedural History

        On August 29, 2017, Plaintiff protectively filed for SSI alleging he became disabled on

December 4, 2015. Tr. 189-98.[2] After being denied initially, Tr. 97, and upon reconsideration, Tr.

115, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 132-34. The ALJ

conducted a hearing on August 28, 2019. Tr. 32. The ALJ denied Plaintiff's claim in a decision dated

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Kilolo Kijakazi for Andrew Saul as Defendant in this action.
[2] Plaintiff's application is dated September 14, 2017, but his protective filing date is August 29, 2017. Tr. 189.

September 20, 2019. Tr. 15-25. Plaintiff requested review of this decision from the Appeals Council. Tr. 186-87. On May 15, 2020, the Appeals Council denied the request, Tr. 1-6, making the ALJ's September 20, 2019 decision the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed June 4, 2020. ECF No. 1.

B.     Plaintiff's Background

Born December 5, 1977, Plaintiff was a day shy of his 38th birthday at the time of his alleged onset date of December 4, 2015. Tr. 191. In his September 2017 Disability Report-Adult form, Plaintiff indicated he completed his GED in 1999, did not attend special education classes, and did not complete specialized training. Tr. 208. Plaintiff indicated he did not work within the 15 years prior to his becoming unable to work. *Id.* Plaintiff indicated that on December 4, 2015, his conditions of right shoulder pain, rotator cup [sic] pain, sciatica lower back, left knee pain, headaches, and forgetfulness became severe enough to keep him from working. Tr. 207.  Plaintiff indicated he was 6'3" tall, weighed 180 pounds, and his conditions caused him pain or other symptoms. *Id.*

In a Disability Report-Appeal dated January 10, 2018, Plaintiff indicated a change in his medical condition that occurred in November 2017. Tr. 235. Plaintiff stated that his back and feet pain was worse, as were his depression and anxiety. *Id.*

C.     Administrative Proceedings

On August 28, 2019, Plaintiff appeared with counsel[3] at an administrative hearing in Greenville, South Carolina and testified regarding his application for SSI. Tr. 34.[4] Vocational Expert ("VE") Mia Heikkila also appeared by telephone and testified. Tr. 34.

1. Plaintiff's Testimony

In response to questions from the ALJ Plaintiff indicated he was 41 years old, 6'2-1/2" tall, and weighed approximately 205 pounds. Tr. 35. Plaintiff indicated he was right-handed and long-separated from a wife he had not seen in about 20 years. Tr. 35-36. Plaintiff said he had no children and lived in Pathway House, a homeless shelter. Tr. 36. Plaintiff said he had lived there for about one year and that it was all on one level. *Id.* Plaintiff stated that he does not have any source of income but that he received food stamps and that the shelter provided meals. Tr. 36-37. Plaintiff testified that he dropped out of school in the ninth grade but obtained his GED later. Tr. 37. Plaintiff stated that he was not working in any capacity at the time of the hearing and that the last time he had done any work was in 2009 when he was doing side jobs, mainly general construction. Tr. 37-38. The ALJ noted Plaintiff was showing no earnings after 2003, and Plaintiff indicated that from 2004 to 2009 he worked short-period jobs in which he was paid cash. Tr. 38. Plaintiff indicated he had been in jail in the late 1990s, just after he had turned 17 but had not been in jail recently other than for "tickets, like during a car wreck in 2009 and stuff like that." Tr. 39. The ALJ asked Plaintiff why he had not worked jobs other than side-jobs since 2003; Plaintiff indicated his "back was getting to where it was getting pretty bad." *Id.* Plaintiff acknowledged he had not put in applications for jobs during that time. *Id.*

---

[3] The hearing transcript improperly identifies Plaintiff's counsel, Timothy Clardy, as Timothy Carney. Tr. 32, 34.

[4] The ALJ appeared by video from Mauldin, South Carolina Tr. 15.

When asked what he did during his days, Plaintiff indicated he would "lay around, sit outside, watch TV." Tr. 39. He said he watched TV about half of the day, he did not read, he did not have family or friends visit, he did not attend club meetings, church, or therapy on a regular basis. Tr. 39. Plaintiff said he did not have internet or play games on a smart phone but that he just sometimes called or texted somebody. Tr. 39. Plaintiff said he did his own laundry and did chores such as sweeping and taking out the trash when those chores were assigned to him at the homeless shelter. He indicated those chores were assigned on a rotating basis and took only about ten minutes to do. Tr. 40. Plaintiff indicated he did not do any yard work or gardening at the homeless shelter. *Id.* Plaintiff said he had no hobbies and did not have a "desire to do much of anything." Tr. 41. The only outdoor activity he did was sitting around outside. *Id.* Plaintiff said he did not walk for exercise and that he could only walk about 10 minutes. Tr. 41. Plaintiff said he did not walk to the store; he rode in a van that took him and others to various stores. *Id.* Plaintiff said he took care of his own personal hygiene and would smoke when someone gave him cigarettes. Tr. 41.

Plaintiff said he had a driver's license until he lost it as the result of a wreck he had in 2009. Tr. 40. Plaintiff said that was the only wreck he ever had and that no one but him was injured. Tr. 40-41. Plaintiff indicated his injuries included crushing both of his feet, collapsing his ankle, having a traumatic brain injury, and losing his spleen. Tr. 41. Plaintiff said he used to drink alcohol but had not had anything to drink since about 2009. Tr. 42. Plaintiff indicated he had received a DUI in the 2009 wreck but indicated he never had never had a problem with drugs or alcohol. *Id.*

When the ALJ asked him what the most severe physical problem that kept him from working was, Plaintiff said it would be his back. Tr. 42. Plaintiff explained that he had sciatica down his legs and that it "comes and goes" anywhere from a "couple [of] times a day to three or four times a week." Tr. 42. Plaintiff indicated there had been x-rays done of his back, and the doctor advised he had

sciatica. Tr. 43. He said he had never had any cortisone or other shots to help with the back pain. Tr. 43.

When asked about any other physical conditions Plaintiff noted that both of his feet had been crushed, his right ankle collapsed, and his right shoulder was messed up. Tr. 42. He also indicated he had an issue with his left knee. Tr. 42. Plaintiff also noted he had a traumatic brain injury and had been in a coma after the wreck and was in the hospital for "a few weeks." Tr. 43.

The ALJ noted Plaintiff had had a recent surgery to remove a screw from one of his feet and asked whether that removal had helped him to have less pain. Plaintiff said, "No, not really." Tr. 44. He explained there was a little less pain because the screw was not sticking out anymore but that there was still pain. Tr. 44. Plaintiff noted it had healed up where the screw had been sticking through the skin. Tr. 44.

The ALJ asked Plaintiff about his left knee issue, and Plaintiff said he had hyper-extended it a few times. Tr. 44. Plaintiff said he first hyper-extended the knee in a motorcycle crash. He noted he had not had any surgeries on his knee. Tr. 44. Plaintiff said that a couple of times a week when he is walking or trying to stand up his knee will feel like it wants to hyper-extend/bend backwards. Tr. 44-45.

When asked about his right shoulder, Plaintiff indicated he had a torn rotator cuff, but he did not recall exactly when that happened. Tr. 45. Plaintiff said it was "hard to me to raise anything pretty well above my head. I can't really, I can lift my arm above my head but I can't lift anything above my head." Tr. 45. Plaintiff then indicated he could not raise his arm all the way up and he could not lift anything. Tr. 45.

The ALJ asked about the injuries to Plaintiff's feet and his right ankle. Tr. 45-46. Plaintiff indicated his whole foot had so many "fractured blisters on it, all they could do was reshape it with

5

their hands, the whole foot." Tr. 46. Plaintiff acknowledged he could walk without a walker or a cane but indicated he could walk only for five to ten minutes before needing to sit down because of extreme pain. *Id.* Plaintiff described the pain as "constant, throbbing at times[,]" and said his ankle had "sharp pains." Tr. 46.

Plaintiff indicated he had had bronchitis since he was a child. The bronchitis makes it difficult to breathe at times, and Plaintiff has an Albuterol inhaler for it. Tr. 46. Plaintiff said he did not have a rescue inhaler or a nebulizer, although he probably needed them. Tr. 47.

Plaintiff indicated he goes to the free clinic for medications for his anxiety and depression. Tr. 47.  Plaintiff did not recall the names of those medications. *Id.*[5]

The ALJ asked Plaintiff whether he had problems sitting. Tr. 47. He said he did and that he was hurting at that time because of sitting at the hearing. *Id.* Plaintiff said he could sit for about 10 minutes at a time before it starts hurting "real bad." Tr. 47-48. The ALJ told Plaintiff he could sit or stand during the hearing. Tr. 47. Plaintiff said he could stand for about 10 minutes before needing to sit down. Tr. 48. Plaintiff said he could lift or carry only very light objects, up to a maximum of 10 pounds. Tr. 48. Plaintiff said he could only climb a few stairs and "not well." Tr. 48.  When asked about side effects from medication, Plaintiff said he was tired all the time. He said that had been going on for a long time, but he could recall how long. Tr. 48.

 Plaintiff's counsel asked Plaintiff how often he had pain in his lower back; Plaintiff responded, "Constantly." Tr. 48. Plaintiff indicated the sciatic pain he experienced from time to time ran down his left leg down into his ankle. Tr. 49. Plaintiff said he was taking Gabapentin and

---

[5] By way of example, February 2019 records from the Free Medical Clinic indicate Plaintiff takes fluoxetine for depression. Tr. 506. February 2018 records listed Cymbalta (duloxetine), Tr. 441, a medication for treatment of depression and anxiety, *see* https://www.webmd.com/drugs/2/drug-91491/cymbalta-oral/details (last visited Feb. 10, 2022).

ibuprofen for his pain. He said his most comfortable position, pain-wise, was to be lying in the bed. Tr. 49. Plaintiff said he lies in bed at least half of the day. Tr. 49.

Plaintiff stated he goes to Greenway United Ministries for his physical- and mental-health treatment. Tr. 50. Plaintiff noted he received care there, but it was "not the kind of care that [he] probably need[ed]." Tr. 53. Plaintiff said Dr. George Cone was his treating doctor there. Tr. 53. Plaintiff said he did not seek a neurologist for the brain injury suffered in his 2009 accident. Tr. 50-51. Plaintiff said he did have some cognitive issues from that injury—he indicated he forgot a lot of things and had a difficult time concentrating. Tr. 50-51. Plaintiff said he got frequent headaches, which he treated by taking ibuprofen "and stuff like that." Tr. 51. Plaintiff said some headaches were "normal," and some were "severe." He said he had severe headaches two or three times per week. When he gets those headaches he has to lie down and needs to stay away from lights. Tr. 51. Plaintiff said the severe headaches lasted anywhere from "ten minutes to two hours." Tr. 52. Plaintiff indicated pain sometimes made it difficult for him to sleep and that he usually only slept two or three hours at a time. Tr. 52. Plaintiff noted his lack of energy but said he did not sleep during the day. Tr. 52.

2.   VE's Testimony

The ALJ noted Plaintiff's most recent work had been sporadic construction work for cash, which "makes it difficult." Tr. 54. The VE identified that past work as Construction Worker I, DOT 869.664-014, heavy, specific vocational preparation ("SVP") 4. Tr. 55. The ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience,[6] indicated she was "going to reduce to sedentary," and set out the following limitations:

> Minus ten pounds frequently, ten pounds occasionally. Sit up for six hours of an eight-
> hour day. Stand and walk up to two hours for a total of eight hours with usual and

---

[6] In her decision, the ALJ found Plaintiff had no past relevant work ("PRW") as that term is defined by applicable regulations. Tr. 24.

> normal breaks. Frequent push and pull bilateral lower extremity, with his feet and ankles. No ladders. Occasional steps, occasional balance, occasional stooping, crouching, kneeling and crawling. Avoid concentrated exposure to cold. Avoid respiratory, concentrated exposure to respiratory irritants. And avoid concentrated exposure to hazards. This person would be able to understand and remember simple, routine instructions. He would be limited to one, two-step tasks and he would be able to maintain concentration, persistence and pace for approximately two-hour periods of time for routine, repetitive tasks.

Tr. 55. The ALJ asked if the hypothetical individual could perform any of Plaintiff's prior work, and the VE responded in the negative. Tr. 55-56. The VE indicated there would be other jobs available. The VE provided the following example of other jobs the hypothetical individual could perform: final assembler, DOT code 713.687-018, sedentary, SVP 2, with approximately 25,000 jobs in the United States. Tr. 56. The VE then indicated that, with the limitations given, final assembler was the only example she could give. Tr. 56.

The ALJ then changed the hypothetical to "unskilled, sedentary unskilled work with [] simple, routine, repetitive tasks, and understanding simple instructions." Tr. 57. The VE indicated the final assembler job would still be available. She also identified other representative jobs that would be available: document preparer, DOT code 249.587-018, sedentary, SVP 2, with approximately 91,600 jobs in the United States; and order clerk, DOT code 209.567-014, sedentary, SVP 2, and approximately 18,600 jobs in the United States. Tr. 57.

The VE confirmed that her testimony did not conflict with the DOT. Tr. 57. The ALJ then sought confirmation that the "simple, routine, repetitive tasks and instructions is within the DOT." Tr. 57. The VE confirmed there would not be a conflict. Tr. 57.

Plaintiff's counsel then asked whether, using the ALJ's hypothetical, there were any jobs with an SVP level of 1. Tr. 58. The VE indicated there were not. Tr. 58. Counsel then separately asked whether, if the individual required a sit/stand option, sitting and changing positions every 10 to 15

minutes, there would be jobs. The VE said there would not. Tr. 58. Finally, counsel asked the VE whether there would be any work for the individual who was absent two days per month, or off task 50 percent or more of the average workday. The VE replied that there would be no work under those circumstances. Tr. 58.

After a brief closing statement by Plaintiff's counsel, the hearing was closed. Tr. 58-59.

II.    Discussion

A.    The ALJ's Findings

In her September 20, 2019 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.    The claimant has not engaged in substantial gainful activity since August 29, 2017, the application date (20 CFR 416.971 *et seq.*).
>
> 2.    The claimant has the following severe impairments: degenerative disk disease of the lumbar spine, chronic pain syndrome in the legs and feet with a history of bilateral foot fractures, a prior right shoulder fracture, chronic bronchitis, left knee impairment, anxiety and depression (20 CFR 416.920(c)).
>
> 3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: frequent pushing and/or pulling with the bilateral lower extremities; no climbing ladders; occasional climbing steps; occasional balancing, stooping, crouching, kneeling or crawling; avoid concentrated exposure to cold, respiratory irritants and hazards; limited to unskilled, simple, routine, repetitive tasks and understanding simple instructions.
>
> 5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on December 5, 1977 and was 39 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.    The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since August 29, 2017, the date the application was filed (20 CFR 404.920(g)).

Tr. 17-18, 20, 24-25.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1)

whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[7] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that

---

[7] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

11

prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

> 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial

evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

     C.     Analysis

Plaintiff alleges the ALJ erred in the following ways: (1) by inadequately evaluating the opinions of examining physician Dr. James Shrouder III and treating physician Dr. George Cone and failing to adequately articulate how she drew her conclusions; (2) by failing to reflect limitations imposed by Plaintiff's medically determinable impairments in his RFC or otherwise failing to explain why limitations were not imposed; and (3) by failing to resolve a conflict between the VE's testimony and the DOT. Pl. Br., ECF No. 17; Pl. Reply, ECF No. 22. The Commissioner contends that substantial evidence supports the ALJ's decision finding that Plaintiff was not disabled. Def. Br., ECF No. 18.

     1.   Evaluation of Medical Opinions

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or give special deference to treating source opinions. 20 C.F.R. § 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[8] Instead, ALJs consider medical opinions using five factors: (1)

---

[8] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2). Those regulations also

supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. § 416.920c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion, and the ALJ is not required to explain the consideration of the other three factors. *Id.* § 416.920c(b)(2). The new regulations further deem certain evidence "inherently neither valuable nor persuasive." 20 C.F.R. § 416.920b(c). This includes statements on issues reserved to the Commissioner such as whether a claimant is disabled, is unable to work, or is incapable of doing past relevant work. 20 C.F.R. § 416.920b(c)(3).

i.  Opinion of consultative examiner James Shrouder, M.D.

On November 25, 2017, Dr. Shrouder examined Plaintiff. Report, Tr. 278-83. Dr. Shrouder noted he had reviewed Plaintiff's medical records and found Plaintiff to be a "reliable historian." Tr. 280. Plaintiff's "Allegations" listed by Dr. Shrouder in his Medical Evaluation were: Right rotator cuff tear; lower back pain with sciatica; left knee pain; headaches; and forgetfulness. Tr. 280. "Not mentioned," as noted by Dr. Shrouder, is "an allegation [of] bilateral foot pain." *Id.* In recounting Plaintiff's "History of Present Illness," Dr. Shrouder notes Plaintiff said he had lost insurance and had been unable to have rotator cuff tear repaired. *Id.* Plaintiff's lower back pain and left-knee hyperextensions are also noted. Dr. Shrouder notes Plaintiff's motor vehicle accident in which he crushed both of his feet, noting there was an apparent internal fixation of the left foot with metal

---

define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 416.913(a)(5).

hardware and no hardware for the right, but doctors "molded it back together with their hands," according to Plaintiff. Plaintiff also relays that he suffered a traumatic head injury during the accident and suffers headaches and forgetfulness. Tr. 280. Regarding Plaintiff's "Functional Status," Dr. Shrouder indicated the following:

> [Plaintiff] is barely able to tie his shoes. The patient is able to cook. He can go up and down the stairs but with caution. The patient states he cannot lift 20 pounds with his upper extremities and he cannot sit long enough to watch a movie. The patient also cannot walk a city block in a normal pace.

Tr. 281. Dr. Shrouder noted Plaintiff's surgical history included fixation of his feet, right ankle surgery, and a splenectomy. *Id.*

> Upon physical examination Dr. Shrouder made the following "General" findings:

> The patient is a 39-year-old Caucasian male who presents in no apparent distress. The patient has a waddling gait, but is mostly stable. He uses no assistive device. He communicates in a fluent speech and is alert oriented x3. He answers questions appropriately and follows simple commands. He was appropriately dressed in casual fashion and has moderately good hygiene. He is very cooperative during exam.

Tr. 281. Dr. Shrouder found Plaintiff's cervical and lumbar spine to have a normal range of motion and normal range of motion in the upper extremities. *Id.* He noted there was no joint crepitus or deformities; however, Dr. Shrouder found Plaintiff to be "a little bit slow with the left shoulder particularly, but [Dr. Shrouder could] appreciate no joint deformities or crepitus." Tr. 281-82. Plaintiff's knees and hips both had a normal range of motion with no joint deformities. Tr. 281. Plaintiff's ankles, however, had an altered range of motion: he was limited to twenty degrees of plantar flexion on the left and ten degrees of plantar and dorsiflexion on the right. Tr. 282. Dr. Shrouder noted the deformity of Plaintiff's feet, mostly on the left, including extensive surgical scarring and exposed metal hardware through the surgical incision in his left foot. Tr. 282. Plaintiff had clawing in multiple toes. *Id.* Plaintiff's grip strength was intact and he had no reduced range of

motion in the hand joints. Tr. 282. Straight leg raising was negative for both siting and supine

positions. Tr. 282. Plaintiff could perform half of a squat but was limited because of foot pain. He

could not tandem, heel, or toe walk. Tr. 282.

In his Assessment he noted Plaintiff's main complaints related to his feet, which had extensive

deformities and exposed metal hardware. Tr. 282. Noting Plaintiff should be seen by an orthopedic

surgeon for the exposed hardware, Dr. Shrouder then indicated the following:

> At this point, [Plaintiff] would be unable to lift, carry, push, pull, stand, or walk with
> very much weight, if any, and certainly for not any longer than very mild distances or
> periods of time. He will be unable to climb. I see no difficulty in patient's stooping or
> bending. If he did this repetitively throughout the course of the day, he would probably
> have lower back pain. I do not think this patient would be a candidate for crawling.
> Kneeling and crouching may also be difficult for him because it appears that even
> applying any additional weight to his feet causes him to have significant pain. His
> balance also seems to be a bit off just secondary to his feet. Fine and gross motor skills
> appear to be normal. Despite this report of a rotator cuff tear, I see no difficulty with
> overhead and forward reaching. He does this a bit slowly anyway, so certainly
> repetitively throughout the course of the day may give him difficulty. I see no difficulty
> in the patient traveling.

Tr. 282.

ii.   Opinion of treating provider George P. Cone, M.D.

On June 11, 2019, George P. Cone, M.D., who treated Plaintiff at Greater Greenwood United

Ministry Free Medical Clinic,[9] completed a Physician Questionnaire. Tr. 879-83.[10] Dr. Cone

indicated he had treated Plaintiff for "several years," noted his "diagnoses" as "automobile wreck

---

[9] *See, e.g.,* Tr. 313 (Feb. 22, 2018 visit noting exposed screw in left foot, diagnosing depression, anxiety, and chronic pain, and indicating (without discussion) belief that Plaintiff is "unable to maintain employment due to multiple medical problems"); 443-44 (Oct. 30, 2018 visit for refills of medications, including Wellbutrin, naproxen sodium, Gabapentin, and amoxicillin); 506 (Feb. 28, 2019 visit diagnosing "acute exacerbation of chronic bronchitis, depression, and chronic low-back pain"); 885 (June 11, 2019 visit for medication refills).
[10] Counsel for Plaintiff disclosed that he created the Physician Questionnaire but affirmed that he "did not issue or play any role in formulating the opinions and statements therein." Tr. 879.

injuries and work related injuries," that were "chronic and will not resolve." Tr. 880. Dr. Cone listed

Plaintiff's symptoms that "hurt the most" as "headaches, memory problems, back, legs, and feet[.]"

*Id.* Dr. Cone indicated Plaintiff experienced pain with "all movement," and indicated psychological

conditions of depression and anxiety contributed to the severity of Plaintiff's symptoms and

functional limitations. Tr. 880. Dr. Cone opined Plaintiff would "Constantly" experience pain during

the workday so as to interfere with the attention and concentration needed to perform even simple

tasks. Tr. 881. Plaintiff's "multiple injuries" made Plaintiff "incapable of even 'low stress' jobs." *Id.*

In response to queries on the Questionnaire Dr. Cone opined Plaintiff could walk 1-2 city

blocks without pain, and he could sit or stand and walk for less than two hours each in a typical

workday. Tr. 881. Plaintiff would not require time to walk throughout the work day. *Id.* Dr. Cone

indicated that when Plaintiff did stand or walk he would require a cane or other assistive device. Tr.

882.[11] Dr. Cone opined Plaintiff could "rarely" lift up to ten pounds, "occasionally" look down, and

"frequently turn head right or left, look up, or hold head in static position." *Id.* Plaintiff could "rarely"

twist, stoop (bend), or climb stairs; he could never crouch /squat or climb ladders. *Id.* Dr. Cone opined

Plaintiff would have significant limitations with reaching, handling, or fingering, but did not indicate

what percentage of the workday this would be so. Tr. 883. Rather than indicate how many days he

believed Plaintiff would need to be absent from work because of his impairments, Dr. Cone indicated

Plaintiff "is not able to work steadily at any job." Tr. 883.[12]

---

[11] In his testimony, Plaintiff said he could walk without a walker or a cane but indicated he could walk only for five to ten minutes before needing to sit down because of extreme pain Tr. 46.

[12] The record also includes a "Medical Release/Physician's Statement" completed by Dr. Cone on February 2, 2019, on a DSS form. Tr. 460-61. Dr. Cone indicated Plaintiff was "unable to work"; he did not provide specific details regarding functional limitations concerning how long Plaintiff could sit, stand, walk, etc., as requested on the form. Tr. 460. Dr. Cone listed Plaintiff's diagnoses as "depression, chronic pain, sciatica, crushed feet unable to stand, asthma, osteoarthritis." Tr. 461.

b. The ALJ's Consideration of the Opinions

In her decision the ALJ indicated that she considered the medical opinions in accordance with the requirements of 20 C.F.R. § 416.920c. Tr. 23. After outlining medical evidence, including the consultative appointment with Dr. Shrouder and appointments with Dr. Cone, Tr. 21-23, the ALJ considered the medical opinions of Dr. Shrouder, Dr. Cone, and state agency examiners, Tr. 23-24.

The ALJ stated that she did not find the September 2019 opinion of Dr. Shrouder persuasive. Tr. 22. The ALJ noted:

> In November 2017, consultative examiner James Shrouder M.D., opined the claimant would be unable to lift, carry, push, pull, stand or walk with very much weight, if any, and certainly not for any longer than very mild distances or periods of time (B1F). Dr. Shrouder continued that the claimant would be unable to climb or crawl, would have difficulty kneeling and crouching, but no difficulty stooping or bending, no difficulty with overhead or forward reaching and normal gross and fine motor skills (B1F). The undersigned finds these limitations unpersuasive. Dr. Shrouder's opinion is only supported by a one-time examination and the assessed limitations are vague. The undersigned finds such limitations inconsistent with the claimant's subsequent performance of yard work that led to both his back pain exacerbations and his functional abilities demonstrated after his February 2019 ankle operation at follow-up appointments (B7F/5; B15F/68; B17F/5).[13]

Tr. 23.

---

[13] The back pain the ALJ is referencing concerns two visits to the emergency department, both brought about by Plaintiff's doing yard work, both of which the ALJ had discussed earlier in her decision. Tr. 21-22; *see* Tr. 317-18 ((ex. B7/3-4), August 2018 visit to hospital with back pain that began when he was doing yard work); Tr. 811-12 ((ex. B15/68-69) May 2019 visit to hospital with left lower back problems after doing weed-eating the day before). Both times Plaintiff was released the same day. The ALJ also references Plaintiff's abilities after a February 2019 ankle operation. Tr. 23 (citing B17F/5). The February 2019 operation related to removal of some hardware that had been placed in Plaintiff's left foot after the 2009 automobile accident. Douglas Powell, M.D. examined Plaintiff on December 20, 2018, and noted a plan for surgical removal of hardware. Tr. 426. Dr. Powell performed outpatient surgery to remove the left-foot hardware on February 20, 2019. Tr. 488-90. Early post-operative visits indicated the wound looked okay but had slight staph infection. Tr. 510 (Mar. 7, 2019); 515 (Mar. 21, 2019). At the March 21, 2019 visit Dr. Powell indicated that "[o]verall the foot looks much better." Tr. 515. When Plaintiff returned to Dr. Powell on June 3, 2019, Dr. Powell noted no drainage from foot, no calls for further surgical intervention, and noted the skin "looks as good as it has looked since I have seen him." Tr. 874. Dr. Powell noted Plaintiff "has expected pain from the previous injuries on both feet." *Id.*

Regarding Dr. Cone's opinion, the ALJ noted the following:

In June 2019, the claimant's treating physician George Cone, M.D., opined the claimant unable to perform even low-stress sedentary work with significant postural and manipulative limitations (B18F). The undersigned finds these limitations unpersuasive. The opinion is not well supported by citations to the medical record and is inconsistent with the claimant's ability to weed eat and perform yard work during the period under adjudication even with his impairments (B7F/5; B15F/68). Additionally, the opinion is inconsistent with the claimant's February 2019 hardware removal operation after which he demonstrated improvement, though he still had residual pains in both ankles (B17F/5).

Tr. 23.

The ALJ also noted the December 2017 and February 2018 opinions of the State agency psychological consultant, finding the limitations set out in those opinions to be "generally persuasive." He found the State agency opinions that Plaintiff would be able to perform simple unskilled work to be "more persuasive," indicating the limitations were supported by citation to the record as it existed at the time; and the additional social limitations were "less persuasive," given Plaintiff's ability to "maintain[] good eye contact and otherwise interact cooperatively with medical personnel" as noted in an consultative psychological evaluation. Tr. 23-24 (referring to exs. B2A and B5A (Dec. 2017 and March 2018 State agency disability determinations, *see* Tr. 85-96, 99-113)[14] and B4F (Nov. 13, 2017 Psychological Evaluation by examining consultant Ron O. Thompson, Ph.D.)).

c. Discussion

---

[14] In December 2017 and March 2018, the state agency medical consultants, Dina Nabors, M.D., and Kimberley Paton, M.D., opined that Plaintiff was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for two hours in an eight-hour workday; and sitting for two hours in an eight-hour workday. Tr. 91, 108. The medical consultants also found that Plaintiff had limited ability to operate foot controls and he could only occasionally perform postural activities, but he had no manipulative, visual, communicative, or environmental limitations. Tr. 91-92, 108-09.

Plaintiff contends the ALJ's findings discounting Dr. Shrouder's opinion because he examined Plaintiff only once and because the asserted limitations were "vague" did not provide sufficient reason for discounting the opinion. Pl. Br. 9. Plaintiff also ascribes error to the ALJ's finding Dr. Cone's opinion not to be supported by the medical record. *Id.* at 9-10. Plaintiff particularly takes issue with the ALJ's findings that the opinions are inconsistent with Plaintiff's performance of yard work and of the improvement in his feet subsequent to his February 2019 surgery to remove hardware from his left foot—considerations common to the ALJ's evaluation of the opinions of both Dr. Shrouder and Dr. Cone. Pl. Br. 10-11. The Commissioner counters that the ALJ did what she was required to do—indicate that the opinions at issue were not supported by or consistent with medical evidence of record. Def. Br. 12-14. On Reply, Plaintiff submits that the Commissioner's argument is based on counsel's post-hoc explanation of how the ALJ's decision may be supportable. Reply 2-3.

Upon a careful review of the record, the court agrees with Plaintiff. Although 20 C.F.R. § 416.920c does away with the idea of assigning "weight" to medical opinions, the ALJ's reasons for finding the opinion of a medical source unpersuasive still must be supported by substantial evidence. The Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *see also Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020). Moreover, "an ALJ continues to have an obligation to include a narrative discussion describing how the evidence supports each conclusion." *Pearce v. Saul*, No. 0:20-cv-1623-PJG, 2020 WL 7585915, at *3 (D.S.C. Dec. 22, 2020) (internal quotations omitted); *see also* SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).”). Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated. *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015). The ALJ must “build an accurate and logical bridge from the evidence to [her] conclusion.” *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

While the Commissioner is correct that the ALJ technically addressed the supportability and consistency of the opinions of Dr. Shrouder and Dr. Cone, she stated only that Dr. Shrouder had examined Plaintiff only once and his “assessed limitations are vague.” Tr. 23. The ALJ offered no explanation of how she found Dr. Shrouder’s findings to be vague. Regarding consistency, the ALJ found Dr. Shrouder’s limitations “inconsistent with the claimant’s subsequent performance of yard work that led to both his back pain exacerbations and his functional abilities demonstrated after his February 2019 ankle operation at follow-up appointments.” *Id.* The ALJ indicated Dr. Cone’s opinion was not well supported by “citations to the medical record” and, again, was inconsistent with Plaintiff’s ability to do yard work and his “improvement” after the February 2019 hardware-removal surgery. *Id.* (citing B17F/5).

Regarding the ALJ’s supportability analysis, the court is not convinced by Plaintiff’s general argument that the ALJ’s finding that an opinion is “vague” or is “not well supported by citations to the medical record” is necessarily erroneous. The ALJ cannot be expected to “prove a negative” by explaining what facts are missing. The court does not consider this aspect of the opinion analysis further, though, because the consistency analysis is not supported by substantial evidence.[15]

---

[15] To the extent the Commissioner’s brief includes additional record citations in support of the ALJ’s findings, such post-hoc rationalization is not sufficient. The court may not consider the Commissioner’s post-hoc rationalizations for the ALJ’s decision-making. *See Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013) (rejecting Commissioner's argument in part because it consisted of “a

The yard-work evidence establishes only that Plaintiff attempted yard work but was in pain such that he needed to go to the emergency department for medical attention. As noted by Plaintiff, the record includes no indication of how long Plaintiff attempted yard work on those two occasions. In fact, at the hearing Plaintiff testified that he did not do any yard work at the homeless shelter where he resided. Tr. 40. As noted in Plaintiff's brief, if record evidence indicated Plaintiff had attempted yard work only for an hour or so and it required him to seek medical attention, that evidence would be consistent with Dr. Shrouder's opinion that Plaintiff would have difficulty walking and that stooping and bending repetitively would cause back pain and with Dr. Cone's opinion that Plaintiff could not sit or stand and walk for more than two hours each in a workday. Tr. 282, 881. The ALJ picked up on the limited evidence regarding Plaintiff's attempts at yard work and used them as lynchpins to support her finding that Plaintiff's activities were not consistent with the opinions at issue. Substantial evidence does not support this.

Nor is the ALJ's consistency analysis salvaged by her reference to Plaintiff's "improvement" and "functional abilities" subsequent to his February 2019 hardware-removal surgery. As an initial matter, it is unclear to what post-surgery "functional abilities" the ALJ was referring or what evidence of improvement in foot-related abilities she was considering. After the February 2019 surgery Plaintiff returned to the surgeon for treatment of an infection that had developed. Tr. 510, 515. When he returned again on June 3, 2019, Dr. Powell noted the wound no longer had drainage and that the "*[s]kin* looks as good as it has looked since I have seen him." Tr. 874 (emphasis added). Dr. Powell continues, however, "He has expected pain from the previous injuries on both feet." *Id.* That

---

post[-]hoc rationalization") (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)); *Alexander v. Colvin*, No. 9:14–2194–MGL–BM, 2015 WL 2399846, at *6 (D.S.C. May 19, 2015) (rejecting Commissioner's argument as "only a post[-]hoc rationalization for upholding the decision, since that is not actually what the ALJ did").

Plaintiff's "skin," which had had a staph infection after the surgical removal of hardware, "looks as good" as the surgeon has seen it look does not indicate any sort of medical finding that could be construed as function-related. In fact, Dr. Powell noted Plaintiff continued to have pain. On May 30, 2019, just prior to the June 3, 2019 visit with Dr. Powell, Plaintiff had gone to Uptown Family Practice to establish a patient relationship. Tr. 868. The provider noted Plaintiff's pain in his left ankle had been reduced since the hardware-removal surgery but noted pain continued in the right ankle. *Id.* Veronica Hinkle, R.N. indicated on the notes from that examination that Plaintiff had foot pain, and Plaintiff was prescribed medication for the pain. Tr. 870. Her notes also indicated that if Plaintiff obtained insurance he would be referred to pain management for his foot pain. Tr. 870. However, other than indicating Plaintiff was in no acute distress and had no edema or varicosities in his extremities, the examination notes do not provide further information about Plaintiff's feet. Tr. 868-70. Of note, Uptown Family Practice's records include no functional assessment of Plaintiff's abilities relative to his feet (or otherwise). Subsequently, however, Dr. Cone provided his detailed Questionnaire in which he did discuss Plaintiff's functional abilities. The ALJ's finding, then, that Plaintiff had demonstrated "functional abilities" and "improvement" subsequent to the hardware-removal surgery are not supported by substantial evidence. It follows then, that her consistency findings are not supported by substantial evidence. The court finds remand appropriate. On remand, the ALJ should re-evaluate the opinions of Dr. Shrouder and Dr. Cone, and, to the extent the ALJ finds those opinions are not consistent with or supported by the evidence of record, the ALJ should provide evidence-supported details regarding same.

  2.  Remaining allegations of error

    As mentioned above, Plaintiff also argues that remand is necessary based on the ALJ's alleged failure to explain how she considered Plaintiff's shoulder impairment in formulating his RFC and her

alleged failure to resolve a conflict between the testimony of the VE and the DOT. Pl. Br. 12-23. The court does not now address these remaining allegations of error, as they may be rendered moot on remand. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763–64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect as it is vacated and the new hearing is conducted de novo). The court notes that the ALJ's consideration of the opinion evidence may impact Plaintiff's RFC assessment and any vocational testimony required thereafter. As part of the overall reconsideration of the claim upon remand, the ALJ should, if necessary, also take into consideration Plaintiff's remaining allegations of error.

### 3. Plaintiff's "Notice of Supplemental Authority"

On August 10, 2021, Plaintiff filed a "Notice of Supplemental Authority" that states in full as follows: "Plaintiff submits *Collins v. Yellen*, 141 S. Ct. 1761 (2021), relying on *Seila Law, LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), as supplemental controlling authority on the constitutionality of the Commissioner's decision. (*See* Attached Office of Legal Counsel Memorandum)." ECF No. 25 at 1. Plaintiff attached a July 8, 2021 memorandum opinion for the Deputy Counsel to the President regarding the Constitutionality of the Commissioner of Social Security's Tenure Protection. ECF No. 25-1. By merely filing his "Notice of Supplemental Authority," though, Plaintiff has raised no issue to be decided in the instant matter. Plaintiff has set out no legal argument, nor does the court find any legal error "on the face of the record as to the constitutionality of the Commissioner's appointment or decision." *McClellon v. Kijakazi*, No. 6:20-CV-3216-SAL, 2021 WL 6133847, at *10 (D.S.C. Dec. 28, 2021) (finding no issue for determination and no legal error raised by social security claimant's filing of the virtually identical "Notice of Supplemental Authority" and attached memorandum opinion).

24

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's finding is supported by substantial evidence or is without legal error. Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, the Commissioner's decision is reversed and remanded  for further administrative action as detailed within.

IT IS SO ORDERED.

February 14, 2022                                    Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge